704 So.2d 579 (1997)
CTC DEVELOPMENT CORPORATION, INC. and Gregory Uzdevenes, Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Appellee.
No. 96-2976.
District Court of Appeal of Florida, First District.
August 26, 1997.
Rehearing Denied October 3, 1997.
Louis K. Rosenbloum and Stephen H. Echsner of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for Appellants.
Michael D. Hook and Charles F. Beall, Jr. of Moore, Hill, Westmoreland, Hook & Bolton, P.A., Pensacola, for Appellee.
PER CURIAM.
CTC Development Corporation, Inc. (CTC), and Gregory Uzdevenes (Uzdevenes) appeal a final summary judgment entered in favor of State Farm Fire and Casualty Company (State Farm), appellee. CTC and Uzdevenes, who are the insureds under a "Contractor's Policy" issued by State Farm, contend the trial court erred in ruling that, as a matter of law, the appellants' mistaken construction of a residence beyond the set *580 back lines of the lot was not an insurable "occurrence" within the meaning of the policy. We agree and reverse.
Uzdevenes, an architect, designed and constructed a residence through his wholly-owned construction company, CTC, for John and Annette Bray. The lot upon which the house was built was subject to certain restrictive covenants which required that the house be situated at least 15 feet from the side lot lines. The house as constructed was located four feet beyond the easterly set back line in violation of the restrictive covenants. Uzdevenes claimed that he built the Bray residence under the mistaken assumption that the homeowners association had approved his request for a variance from the set back line requirements.
Finley and Judy Holmes, who owned the property adjoining the Bray residence, filed suit during construction of the Bray residence against Uzdevenes, CTC, the Brays and AmSouth Bank of Florida, the construction lender, seeking an injunction and compensatory damages. Uzdevenes and CTC called upon State Farm to defend the Holmes' complaint and to indemnify them for the damages claimed by the Holmes. State Farm declined to defend and denied coverage for this incident. Ultimately, the Holmes' suit was settled by Uzdevenes and CTC jointly paying $22,500 to the Holmes. In addition, CTC and Uzdevenes incurred $29,400 in attorney's fees and other defense costs.
Uzdevenes and CTC filed suit against State Farm seeking damages against the insurer based upon its failure to defend the Holmes' action and to indemnify Uzdevenes and CTC for their losses. In its answer, among other things, State Farm denied any defense or coverage obligations under the policy, contending that the damages claimed by the Holmes did "not constitute property damage caused by an occurrence" or an "accident" under the terms of the policy.
State Farm's policy which is the subject of the instant action is entitled a "Contractor's Policy." For an annual policy premium of $5,927, the policy provided business liability insurance coverage of $500,000 and other coverages up to $1,000,000 to CTC as the named insured and to Uzdevenes as an executive officer of the named insured. Under the policy, the "Comprehensive Business Liability" coverage obligates the insurer to:
pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.... This insurance applies only:
1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period.
"Occurrence" is defined in the policy as follows:
a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage; or
b. the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury.
For purposes of this definition bodily injury or property damage resulting from the use of reasonable force to protect persons or property will be considered an accident.[1]
The term "accident" is not defined in the policy. The policy contains the following exclusion, among others, stating that business liability coverage does not apply:
1. to bodily injury or property damage:
a. expected or intended from the standpoint of the insured; or
b. to any person or property which is the result of willful and malicious acts of the insured.
State Farm moved for summary judgment arguing that under Hardware Mut. Cas. Co. v. Gerrits, 65 So.2d 69 (Fla.1953), the construction of the Bray home beyond the set back line resulting in damage to the Holmes did not constitute an "accident" within the meaning of its liability policy because the construction was an intentional act. The trial *581 court agreed and granted summary judgment. This appeal followed.
This case is controlled by the earlier decision of this court in Grissom v. Commercial Union Ins. Co., 610 So.2d 1299 (Fla. 1st DCA 1992), rev. denied, 621 So.2d 1065 (Fla.1993). For that reason, the case must be reversed. We also feel that the result reached here is an acceptable one considering the terms and language of the insurance policy at issue. In short, it is reasonable to conclude that the injury endured by Finley and Judy Holmes fits into the policy's coverage of "property damage" caused by an "occurrence" defined as an "accident."
We would also point out, however, that notwithstanding the explanation set out in Grissom, we do not agree that there is a meaningful difference in the policy provisions in Grissom and those involved in Hardware Mut. Casualty Co. v. Gerrits, 65 So.2d 69 (Fla.1953). We cannot state that there is a meaningful difference in language between an "accident" and an "occurrence" defined as an "accident." However, because of the requirements of stare decisis, the dictates of the Grissom case apply here.
Reversed and remanded for proceedings consistent with this opinion.
JOANOS and WOLF, JJ., concur.
VAN NORTWICK, J., concurs specially with written opinion.
VAN NORTWICK, Judge, concurring specially.
I agree with the majority that Grissom v. Commercial Union Ins. Co., 610 So.2d 1299 (Fla. 1st DCA 1992), compels that we reverse here. I write separately because I disagree with the majority's conclusion that there is not a meaningful distinction between the applicable insurance policy provisions in the instant case and in Grissom and the policy provisions in Hardware Mut. Cas. Co. v. Gerrits, 65 So.2d 69 (Fla.1953).
The central question posed by this case is whether, under the instant policy language, the mistaken construction of a house in violation of a set back line requirement constitutes an "accident" or "occurrence." Few insurance policy terms have provoked more controversy in litigation than the word "accident." See Appleman, Insurance Law and Practice (Berdal ed.), § 4492 (Appleman). As this court has recognized, "[a]s used in various types of insurance policies, the term `accident' ... has been given various meanings, with no indication of uniform agreement on a single accepted definition." Grissom, 610 So.2d at 1304. Professor Appleman explains that, as a result of this ambiguity, over the last 20 years insurance carriers have revised the language in comprehensive general liability policies by substituting the word "occurrence" for "accident" and, generally, by defining "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Appleman at § 4492. According to Appleman, used in this manner, the meaning of "accident" provides coverage not only for an accidental event, but also for the unexpected injury or damage resulting from an intentional act. Id. As a result, under this policy language, if the resulting damages can be viewed as unintended by a fact-finder, the event constitutes an "accident" for purposes of the liability insurance policy. Id. at § 4492.02.
The policy language in Gerrits, upon which the appellee relies, is an example of the ambiguous use of the term "accident" discussed by Appleman. In Gerrits, the insured constructed a building, locating it on the lot based upon a survey. The owner of an adjacent property brought suit claiming the insured's building encroached upon his property. The insured sought coverage under his liability insurance policy claiming that his construction of the building in a location encroaching on an adjacent lot was based on an erroneous survey and constituted an "accident" under the policy.
The policy in Gerrits provided, in pertinent part, as follows:

Coverage B. Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident *582 and arising out of the hazards hereinafter defined. (emphasis added).
Gerrits, 65 So.2d at 70. Significantly, the Gerrits policy did not define "accident." In holding that the insured's construction of the building was not an "accident" within the insurance policy, the Gerrits court in effect defined the term "accident" for the purposes of coverage under the policy, explaining:
An effect which is the natural and probable consequence of an act or course of action is not an accident. The effect which was the natural and probable consequence of [the insured's] act in erecting the building was the encroachment on the adjoining property.
Id. at 70-71.
In Grissom, this court addressed insurance policy language markedly different from the Gerrits policy, but similar to the policy at bar. The Grissom court held that the term "accident," as defined in the policy, included "an unexpected or unintended injury or damage that results from a known cause." 610 So.2d at 1306. In Grissom, the insured property owner allegedly altered the natural water course across his property causing drainage problems that resulted in the flooding of the adjoining landowner's property. Adjoining and upstream landowners sought to recover against the insured, who sought defense and indemnification from his insurance carrier. The subject insurance policy insured the property owner for damages caused by an "occurrence." "Occurrence" was defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured..." Id. at 1304.
In Grissom, the trial court agreed with the insurer that the insured's action in altering the water course across his property was intentional and therefore was not an "accident." On appeal, this court found the term "accident" ambiguous and construed the policy in a light most favorable to the insured following
the settled rule that insurance policies are to be construed liberally in favor of the insured and strictly against the insurer, and that whenever the language is susceptible of two or more constructions, the court must adopt that which is most favorable to the insured.
Id. at 1304 (citation omitted). This court then construed the term "occurrence" under the Grissom policy to apply to any bodily injury or property damage inflicted by the insured on a third party where the insured does not intend to cause any harm to the third party, even though damages are caused by the insured's intentional acts and are reasonably foreseeable by the insured. Id. at 1305. The policy language was interpreted to exclude from coverage only an event where the resulting bodily injury or property damage was expected or intended by the insured. Id. at 1306. Accordingly, although the insured's intentional alteration of the water course across his property was not accidental, the flooding and damage to the adjoining landowner's property was neither expected or intended from the insured's standpoint and therefore constituted a covered "accident" within the policy definition of the term "occurrence." Id. at 1307.
I recognize that the policy definition of "occurrence" here appears somewhat different than the policy language in Grissom. The Grissom policy, as well as the model policies discussed by Appleman, define "occurrence" to mean "an accident ... which results in bodily injury or property damage neither expected or intended from the standpoint of the injured...." Grissom, 610 So.2d at 1304; see Appleman at § 4492. The State Farm policy here reaches the same point by placing similar language in the exclusionary provision, which excludes coverage for bodily injury and property damage "expected or intended from the standpoint of the insured." It is clear that, when the State Farm policy definition of "occurrence" is read together with this exclusionary provision,[1] the effect of the policy language in the instant case is identical to that in Grissom. See also Spengler v. State Farm Fire & Cas. Co., 568 So.2d 1293, 1295 (Fla. 1st DCA 1990)(coverage exclusion for bodily injury or property damage "which is either expected or intended by an insured" did not apply *583 where insured intended to shoot supposed burglar but actually shot girlfriend instead, because liability under policy should not be precluded for an expected or intended act which results in unexpected or unintended injury).
Here and in Grissom, unlike the insurance policy in Gerrits, the policy covers injury or damage "caused by an occurrence" and defines "occurrence" to include injury or damage which was neither expected nor intended by the injured. As recognized by Appleman, this modified policy language provides broader coverage for the injured than the Gerrits definition of "accident," which limited coverage to injury or damage caused by an accidental event. Appleman at § 4492; see also Grissom, 610 So.2d at 1305-06. Because the parties in Grissom and in the instant case contractually provided for insurance coverage broader than that provided in the Gerrits policy, I find the coverage provisions of the policy in Gerrits clearly distinguishable from the provisions in Grissom and the instant case.
NOTES
[1] In the State Farm policy, defined terms are printed in bold type face.
[1] As stated in section 627.419(1), Florida Statutes (1995), governing construction of policies:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.
See e.g. Price v. Southern Home Ins. Co. of the Carolinas, 100 Fla. 338, 129 So. 748 (1930). Thus, we are obligated to adopt the construction of the policy which will give effect to the whole instrument and to each of its various parts and provisions. Miller Elec. Co. v. Employers' Liab. Assurance Corp., 171 So.2d 40 (Fla. 1st DCA 1965). The interpretation here is also consistent with the purpose of the exclusionary provision. The exclusionary clause "marks the boundary of the coverage of the policy ..." New Hampshire Ins. Co. v. Carter, 359 So.2d 52, 54 (Fla. 1st DCA 1978). Further, the object of the exclusionary clause is to exclude that which would otherwise be included within the policy coverage, so as to prevent misinterpretation. Appleman at § 7387.