720 So.2d 1072 (1998)
STATE FARM FIRE AND CASUALTY COMPANY, Petitioner,
v.
CTC DEVELOPMENT CORPORATION, Respondent.
No. 91717.
Supreme Court of Florida.
October 8, 1998.
Michael D. Hook and Charles F. Beall, Jr., of Moore, Hill, Westmoreland, Hook & Bolton, P.A., Pensacola, for Petitioner.
Louis K. Rosenbloum, Pensacola, and Stephen H. Echsner of Levin, Middlebrooks, Thomas, Mitchell, Green, Echsner, Proctor & Papantonio, P.A., Pensacola, for Respondents.
PARIENTE, Judge.
We have for review CTC Development Corp. v. State Farm Fire & Casualty Co., 704 So.2d 579 (Fla. 1st DCA 1997), based on express and direct conflict with this Court's opinion in Hardware Mutual Casualty Co. v. Gerrits, 65 So.2d 69 (Fla.1953). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons stated below, we recede from our earlier decision in Gerrits and hold that when the term "accident" is undefined in a liability policy, the term includes not only "accidental events," but also damages or injuries that are neither expected nor intended from the viewpoint of the insured.

I. FACTS
Gregory Uzdevenes is a professional architect and sole owner of the construction company CTC Development Corporation, Inc. (CTC). Both Uzdevenes and CTC were the insureds under a "Contractor's Policy" issued by State Farm Fire and Casualty Company *1073 (State Farm), paying a premium of $5,926.92 per year. The contractor's policy described the insureds' business as including "the construction of residential property." The policy provided various types of coverage, including liability coverage of up to $500,000 for damages caused by "occurrences."
The damages in this case resulted from Uzdevenes' construction of a residence for John and Annette Bray (the Brays) on their property, in violation of restrictive covenants requiring that the house be at least fifteen feet from each side lot line. Uzdevenes admitted that he constructed the house knowing it was beyond the easterly setback, but asserted that he was under the mistaken impression that the homeowners' association had approved his request for a variance from the setback requirements.
According to Uzdevenes, a day or two after he submitted the plans to the homeowners' association for approval, he called the association president to "formally" request a variance to place the house beyond the easterly setback. Uzdevenes claimed that the association president did not ask for a written request. A week to ten days later, Uzdevenes received a letter from the association president approving the "plans submitted." Unsure whether this approval included the variance request, Uzdevenes again called the president who told him that the variance would be "no problem."
Uzdevenes proceeded with the construction. It was only after the construction was sixty percent complete that he learned of a possible problem with the variance. According to Uzdevenes, at this point it would have cost him approximately $275,000 to tear down the home and reconstruct it within the setback. Subsequently, the neighboring property owners, Finley and Judy Holmes, filed suit against Uzdevenes, CTC, the Brays, and the Brays' lender, seeking an injunction and compensatory damages.
Uzdevenes called upon State Farm to defend and indemnify him and CTC for the damages claimed, but State Farm denied coverage and declined to defend. Uzdevenes and CTC ultimately settled the suit with the Holmeses for $22,500. Uzdevenes and CTC then brought suit against State Farm seeking damages for State Farm's failure to defend and indemnify them in the Holmeses lawsuit. In addition to seeking the settlement amount of $22,500, Uzdevenes and CTC claimed they incurred $29,400 in attorneys' fees and costs in defending the suit.
Section II of the contractor's policy, entitled "Comprehensive Business Liability," included coverage for:
[T]hose sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.... This insurance applies only:
1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period....
(Emphasis supplied.) "Occurrence" is broadly defined by the policy as:
a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage; or
b. The commission of an offense, or a series of similar related offenses, which results in personal injury or advertising injury.
For purposes of this definition, bodily injury or property damage resulting from the use of reasonable force to protect persons or property will be considered an accident.
(Emphasis supplied.) One of the policy exclusions provides that coverage does not apply to:
1. bodily injury or property damage:
a. expected or intended from the standpoint of the insured; or
b. to any person or property which is the result of willful and malicious acts of the insured.
(Emphasis supplied.)
State Farm moved for summary judgment, relying on Gerrits, which it claimed was "identical" in terms of the facts of the case and the policy language at issue. State Farm contended that, as a matter of law, the construction of the home beyond the setback, *1074 even if built based on the mistaken assumption that a variance had been granted, did not constitute an "occurrence" within the meaning of its policy. Based on Gerrits, the trial court granted summary judgment, which was reversed by the First District. See CTC Development Corp., 704 So.2d at 581.

II. ANALYSIS
The issue to be decided in this case is whether the term "accident" in a liability policy, which term is not otherwise defined, should be defined to include not only "accidental events," but also injuries or damages that are neither expected nor intended from the standpoint of the insured. To so hold requires that we recede from Gerrits.

A. Gerrits

In Gerrits, the insured (a professional contractor and builder) constructed a home on his own property, which home partially encroached on his neighbor's property. The insured knowingly built the home at the location but did not intend to encroach on the neighboring property, relying on a faulty survey. The insured's policy provided for reimbursement of all sums the insured became obligated to pay by virtue of an "accident." The policy did not define the term "accident."
This Court reasoned in Gerrits that the insured's construction of the home over the property line could not be considered an accident because the insured "deliberately and designedly (although erroneously) located the building on a part of the adjoining property and he intended to build it at that particular site." 65 So.2d at 71. The Court reasoned that:
When a person understands facts to be other than they are and is free from negligence, a "mistake of fact" occurs. An effect which is the natural and probable consequence of an act or course of action is not an accident. The effect which was the natural and probable consequence of the Plaintiff's act in erecting the building was the encroachment on the adjoining property. This is true whether the Plaintiff knew the facts as they were or understood them to be other than they were. The result or effect would be the same.
Id. (some emphasis supplied).
The Court did not address whether the term "accident" as used in the policy was ambiguous or subject to differing interpretations. It also did not consider the determinative issue to be whether the insured actually intended or expected the harm; it concluded only that the encroachment on the adjoining property owner's land could not be considered an accident because it was the "natural and probable consequence" of the insured's deliberate act of building the house on the adjoining property.
By utilizing the concept of "natural and probable consequences," the Court incorporated tort law principles into its interpretation of the term "accident." However, as this Court stated forty years later in Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993), "Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts." In Swindal we considered the term "natural and probable consequence" interchangeably with the term "reasonably foreseeable," see id. at 472, and quoted with approval Justice Drew, who in writing for a majority[1] of this Court in Gulf Life Insurance Co. v. Nash, 97 So.2d 4, 9 (Fla.1957), stated that the "`doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies.'" Swindal, 622 So.2d at 470 (quoting Nash).

B. The Present Case

The State Farm policy in the present case defines occurrence as an "accident," but then leaves the term "accident" undefined. However, an exclusionary clause in the same policy provides that coverage does not apply to property damage "expected or intended from the standpoint of the insured."
Although exclusionary clauses cannot be relied upon to create coverage, see LaMarche *1075 v. Shelby Mut. Ins. Co., 390 So.2d 325, 326 (Fla.1980); Lassiter Constr. Co. v. American States Ins. Co., 699 So.2d 768, 769 (Fla. 4th DCA 1997), principles governing the construction of insurance contracts dictate that "[w]hen construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia." Nationwide Mut. Fire Ins. Co. v. Olah, 662 So.2d 980, 982 (Fla. 2d DCA 1995); see also § 627.419(1), Fla. Stat. (1997) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any ride or endorsement thereto.") (emphasis supplied). Reading the coverage provision of the policy together with the exclusionary clause could support a conclusion that coverage is provided in the State Farm policy for occurrences where the insured did not intend or expect to cause harm to the third party.
The existence of the exclusionary clause of the policy in this case could be considered a distinction from the policy in Gerrits.[2]See CTC Dev. Corp., 704 So.2d at 582 (Van Nortwick, J., concurring specially). However, the Gerrits definition of "accident" could be broadly applied to any liability policy where the term is undefined; therefore, we are required to directly confront the scope of the term "accident," rather than rely solely on the exclusionary clause in this policy to distinguish this case from Gerrits.

C. Coverage for "Accidents"

The difficulty in precisely defining the scope of coverage in liability policies providing coverage for "accidents" is not a problem of recent vintage. As Judge Van Nortwick observed in his concurring opinion in CTC Development Corp., few insurance policy terms have "provoked more controversy in litigation than the word `accident.'" 704 So.2d at 581 (Van Nortwick, J., concurring) (quoting 7A John Alan Appleman & Walter F. Berdal, Insurance Law and Practice § 4492, at 14 (rev. ed.1979)) (hereinafter Appleman). In the forty-five years since Gerrits, the courts of this state have given varying interpretations and definitions to the term "accident," when not otherwise explicitly defined or clarified by language in the policy itself. See Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1304-06 (Fla. 1st DCA 1992), and cases cited therein. As observed by Judge Zehmer, there has been no "indication of a uniform agreement on a single accepted definition" of the term. Id. at 1304.
According to Professor Appleman, the restrictive definition of accident as "an event happening suddenly ... proved to be unsatisfactory to the policyholder, the public and the courts." Appleman § 4492, at 14-15. As a result, in 1966 and again in 1972, changes were made to standard comprehensive general liability policies by substituting the word "occurrence" for "accident," and by defining "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which result[s] in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Id.; see generally Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700, 702-03 (Fla.1993).
Coverage under this definition would be provided not only for an accidental event, but also for the unexpected injury or damage resulting from the insured's intentional acts. See Appleman, § 4492.02, at 32-33; Dimmitt, 636 So.2d at 704. Thus, if the resulting damages are unintended, the resulting damage is "accidental even though the original acts were intentional." Appleman § 4492.02 at 33. Viewing the term "accident" from the standpoint of whether the insured expected or intended the damages is appropriate because, as Professor Keeton explains in his *1076 treatise on insurance law, the insured is the person whose economic interest is protected by the liability policy as opposed to the one who sustains harm to his person or property. See Robert E. Keeton & Alan I. Widiss, Insurance Law, § 5.4(c), at 511 (1988).
The policy in this case, like the policy in Gerrits, leaves the term "accident" undefined. The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts. See Container Corp. of America v. Maryland Cas. Co., 707 So.2d 733, 736 (Fla.1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998). However, where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer. Container Corp., 707 So.2d at 736; Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). In addition, "when an insurer fails to define a term in a policy, ... the insurer cannot take the position that there should be a `narrow, restrictive interpretation of the coverage provided.' " State Comprehensive Health Ass'n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997); see also State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1247 n. 3 (Fla.1986); National Merchandise Co. v. United Serv. Auto. Ass'n., 400 So.2d 526, 530 (Fla. 1st DCA 1981).
In this case, we conclude that the term "accident" within a liability policy is susceptible to varying interpretations and should be construed in favor of the insured. Rather than defining the term most favorably to the insured, this Court in its 1953 Gerrits opinion adopted a more restrictive definition  a definition that was improperly derived from tort law. Moreover, the definition of "accident" set forth by this Court in Gerrits is contrary to the standardized language found in comprehensive general liability policies since 1972. See Appleman, § 4492, at 15; Dimmitt, 636 So.2d at 703-04. We therefore recede from Gerrits and its outmoded definition of "accident" in liability policies.
We hold that where the term "accident" in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only "accidental events," but also injuries or damage neither expected nor intended from the standpoint of the insured. This definition comports with the language used in standard comprehensive general liability policies and with the definition of the term "accidental" set forth in Dimmitt as "unexpected or unintended." 636 So.2d at 704.
In many cases the question of whether the injury or damages were unintended or unexpected will be a question of fact; in some cases, the question will be decided as a matter of law, such as in cases where the insured's actions were so inherently dangerous or harmful that injury was sure to follow. See, e.g., Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989)(harm always results from sexual abuse so that any intent to commit abuse necessarily carries with it an intent to commit harm). As Justice Souter stated while a member of the New Hampshire Supreme Court, "If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an `occurrence.'" Vermont Mutual Ins. Co. v. Malcolm, 128 N.H. 521, 517 A.2d 800, 803 (N.H.1986).

III. CONCLUSION
Viewing the facts most favorably to the insured, Uzdevenes did not expect or intend for damages to result from his act of constructing the home. He did not openly defy the setback requirements; he mistakenly believed that he had received a variance for the construction. Therefore, the fact that he intentionally constructed the house knowing that it was outside of the setback line does not preclude a finding of coverage under his liability policy for this "occurrence." We conclude that summary judgment was improperly granted because the trial court applied the Gerrits definition of accident and concluded, as a matter of law, that the damage suffered by the Brays was not covered by the liability policy. Accordingly, we approve *1077 the result reached by the First District and recede from Gerrits.[3]
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Although the Southern Reporter labels Justice Drew's opinion as "dissenting in part," see Gulf Life Insurance Co. v. Nash, 97 So.2d 4, 8 (1957), his opinion was the view of the majority of the court. See id. at 5.
[2] The Hardware Mutual Casualty Co. v. Gerrits, 65 So.2d 69 (Fla. 1953), opinion does not mention the wording of any exclusionary clause in the policy in that case. Thus, it is unknown whether the policy contained an exclusionary clause with wording similar to the exclusionary clause in this case. The First District's majority opinion, however, found no "meaningful difference" between the policy language in Gerrits, and the policy language in this case, yet nonetheless reversed, relying on its prior decision in Grissom v. Commercial Union Ins. Co., 610 So.2d 1299 (Fla. 1st DCA 1992). See CTC Development Corp. v. State Farm Fire & Casualty Co., 704 So.2d 579, 581 (Fla. 1st DCA 1997).
[3] We do not decide whether summary judgment could be granted on the issue of duty to defend. The duty to indemnify is determined by the underlying facts of the case, see Hagen v. Aetna Casualty & Surety Co., 675 So.2d 963, 965 (5th DCA), review denied, 683 So.2d 483 (Fla. 1996), whereas the duty to defend is controlled by the allegations in the complaint against the insured. See National Union Fire Ins. v. Lenox Liquors, Inc., 358 So.2d 533, 538 (Fla. 1977); Scheer v. State Farm Fire & Cos. Co., 708 So.2d 312, 313 (Fla. 4th DCA 1998). The record before us does not allow us to decide the issue of the duty to defend as a matter of law. In any event, the issue of State Farm's duty to defend was not separately discussed in the First District's opinion.