890 So.2d 1141 (2004)
FCCI INSURANCE COMPANY, Appellant,
v.
Jeanette A. HORNE, etc., et al., Appellees.
No. 5D04-122.
District Court of Appeal of Florida, Fifth District.
December 10, 2004.
*1142 Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for Appellant.
Chris Ballentine of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., Orlando, for Appellee One Beacon Insurance Company.
Angela C. Flowers of Kubicki Draper, Miami, for Appellee Modern Continental South, Inc.
No Appearance for Appellees Jeanette A. Horne, et al.
SHARP, W., J.
The issue in this case is whether an insurer must honor its contractual obligation to defend or indemnify its insured under a liability policy which applies to bodily injury by "accident" and excludes intentionally caused injury where it is alleged the insured engaged in conduct "substantially certain to result in serious injury or death." We conclude that, under the facts in this case, the insurer must do so and affirm the judgment below.[1]
Appellant FCCI insurance Company provided both workers' compensation and employer's liability insurance to its insured Scarborough Civil Company. On July 25, 2000, two Scarborough workers, Horne and Creason, died when a trench in which they were working caved in and completely buried them.
The families of Horne and Creason received workers' compensation benefits from FCCI. The estates of both workers also filed wrongful death actions against Scarborough and other defendants. To avoid Scarborough's immunity provided by the workers' compensation law, the estates alleged Scarborough engaged in conduct which was "substantially certain to result in serious injury or death."[2]
FCCI then filed this declaratory judgment action against the estates and others seeking a determination that its liability policy did not require it to defend or indemnify Scarborough.[3] FCCI moved for summary judgment, arguing in part that the complaints in the wrongful death actions failed to establish a covered "accident" and in fact, alleged intentional conduct which is excluded from coverage. The trial court disagreed and entered summary judgment for the defendants. Our review of this issue is de novo.[4]
*1143 We begin our analysis by noting that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993).
In construing insurance contracts, the courts generally apply a liberal interpretation to coverage provisions. On the other hand, exclusion clauses are considered contrary to the fundamental protective purposes of insurance. Thus courts give a strict interpretation to exclusion clauses. Hrynkiw v. Allstate Floridian Ins. Co., 844 So.2d 739 (Fla. 5th DCA 2003); Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618 (Fla. 2d DCA 1997). In addition, if any ambiguity is found in an insurance policy, it is construed against the insurer. Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998); Premier Ins. Co. v. Adams, 632 So.2d 1054 (Fla. 5th DCA 1994).
Here, the liability policy issued to Scarborough applies to "bodily injury by accident or bodily injury by disease." The policy further provides that it does not cover "bodily injury intentionally caused or aggravated by [Scarborough]." (emphasis in both added) The policy does not further define what is meant by "accident" or "intentionally."
The problem arises in this case because the wrongful death actions alleged a type of intentional tort so as to avoid Scarborough's workers' compensation immunity. Workers' compensation generally is the exclusive remedy for the employee's injury or death arising out of work performed in the course or scope of his or her employment. Thus, absent an exception, the workers' compensation law provides employers with immunity from liability for an employee's injury beyond workers' compensation benefits. Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000); Allstates Fireproofing, Inc. v. Garcia, 876 So.2d 1222 (Fla. 4th DCA 2004).
One exception to the workers' compensation immunity is the so-called "intentional tort" exception. In Turner, the Florida Supreme Court reaffirmed prior decisions that the workers' compensation law does not protect an employer from liability for an intentional tort against an employee. See also Folds v. J.A. Jones Constr. Co., 875 So.2d 700 (Fla. 1st DCA 2004) (one exception to the bar of workers' compensation immunity is that an injured employee may sue the employer for an intentional tort); Glasspoole v. Konover Constr. Corp. South, 787 So.2d 937 (Fla. 4th DCA 2001)(workers' compensation law does not protect an employer for liability for an intentional tort against an employee).
For purposes of this exception, an employee has two alternative ways to prove an intentional tort by the employer: 1) the employer exhibited a deliberate intent to injure or 2) the employer engaged in conduct which is "substantially certain" to result in injury or death. Turner. The first alternative employs a subjective test. The second alternative applies an objective test to determine whether a reasonable employer should have known that its intentional conduct was substantially certain to result in injury or death. Turner; Glasspoole. Under the second alternative, the employer's actual intent is not controlling. Turner.[5]
*1144 Here both wrongful death actions alleged that Scarborough engaged in conduct "substantially certain to result in serious injury or death." By alleging that Scarborough's conduct was substantially "certain" to result in injury, FCCI argues the complaints themselves established the incident cannot be an "accident" and would fall within the exclusion for intentional acts by the insured.
Apparently few insurance policy terms have provoked more controversy in litigation than the word "accident." CTC Development Corp., Inc. v. State Farm Fire & Cas. Co., 704 So.2d 579, 581 (Fla. 1st DCA 1997) (Van Nortwick, J., concurring), approved, 720 So.2d 1072 (Fla.1998). When not otherwise expressly defined or clarified by language in the policy itself, the word "accident" has been given various meanings with no uniform agreement on a single accepted definition. Grissom v. Commercial Union Ins. Co., 610 So.2d 1299 (Fla. 1st DCA 1992), rev. denied, 621 So.2d 1065 (Fla.1993).
In Grissom, the court observed that Florida cases consistently have held that liability policies covering "accidents" apply to injury or damage caused by the insured's intentional acts so long as the insured did not intend to cause any harm. In State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072 (Fla.1998), the Florida Supreme Court explained:
We hold that where the term "accident" in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only "accidental events," but also injuries or damage neither expected nor intended from the standpoint of the insured. This definition comports with the language used in standard comprehensive general liability policies and with the definition of the term "accidental" set forth in Dimmitt as "unexpected or unintended." 636 So.2d at 704 [700].
In many cases the question of whether the injury or damages were unintended or unexpected will be a question of fact; in some cases, the question will be decided as a matter of law, such as in cases where the insured's actions were so inherently dangerous or harmful that injury was sure to follow. See, e.g., Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989)(harm always results from sexual abuse so that any intent to commit abuse necessarily carries with it an intent to commit harm). As Justice Souter stated while a member of the New Hampshire Supreme Court, "If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an `occurrence.'" Vermont Mutual Ins. Co. v. Malcolm, 128 N.H. 521, 517 A.2d 800, 803 (N.H.1986).
720 So.2d at 1076.
Here the estates alleged only that injury or death was substantially certain to result from Scarborough's conduct. Since there were no allegations Scarborough intended to cause any harm to its workers, we conclude the incident falls within the scope of an "accident" under the liability policy. See State Farm Fire & Cas. Co. v. CTC Development Corp (builder's mistaken belief *1145 that he had received a variance to construct house outside setback line was an "accident" and thus an "occurrence" within meaning of contractor's liability insurance policy, even though builder intentionally constructed the house knowing that it was outside the line); Grissom (unintentional damage which resulted from intentional filling of water course was an "accident" under policy).
We also conclude these allegations do not fall within the "intentional" act exclusion of the policy. In Ziebart Int'l Corp. v. CNA Ins. Co., 78 F.3d 245 (6th Cir.1996), the court noted that Michigan's workers' compensation law recognizes two distinct kinds of intentional torts: 1) the "true" intentional tort in which an employer specifically intended an injury, and 2) a tort in which the employer has actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. With regard to the second type of tort, the term "intentional tort" is something of a misnomer since intent is not required. Id.
Florida's workers' compensation law likewise recognizes two distinct kinds of intentional torts  the subjective "deliberate intent" to injure tort and the objective "substantially certain" to result in injury or death tort. Turner. The wrongful death actions alleged the "substantially certain" type of intentional tort and not a "true" intentional tort.[6]
In a substantially similar case involving a trench cave-in, the court held that allegations the injury was "substantially certain" to occur did not result in the incident falling under the liability policy's exclusion for bodily injury or damage "intentionally" caused by the insured. Royal Indemnity Co. v. Soneco/Northeastern, Inc., 183 F.Supp.2d 526 (Dist.Ct.Conn.2002). In that case, two Soneco workers were injured from a trench cave-in while attempting to rescue a co-worker. They filed suit against Soneco and alleged intentional reckless misconduct so as to circumvent Soneco's workers' compensation immunity. By doing so, Soneco's insurance company (Royal Indemnity) claimed the incident clearly fell within the policy's exclusion for intentional injuries.
Since the workers had not alleged a "true" intentional tort, the court found their claims did not fall within the exclusion:
The specific allegations in the ... complaints reference intentional acts and omissions by Soneco  e.g., the refusal to provide trench boxes, the failure to provide a safe means of egress, allowing plaintiffs to work in excavations where water had accumulated, the failure to provide adequate training  which, they allege, were `substantially certain' to result in the injuries that they sustained. Nowhere do they allege that Soneco intentionally injured them or intentionally aggravated their injuries. We find that their claims, as alleged, of intentional acts and omissions by Soneco that were substantially certain to result in the injuries do not fall within the language of the exclusion in Royal Indemnity's policy for `bodily injury intentionally *1146 caused or aggravated' by the insured.
183 F.Supp.2d at 532.
Likewise the wrongful death actions here involve the "substantially certain" tort rather than a true intentional tort. Since there were no allegations Scarborough intended to harm its workers, we conclude the incident does not fall under the exclusion for bodily injury intentionally caused by the insured. See Royal Indemnity Co; Cavalier Mfg. Co. v. Employers Ins. of Wausau, 222 Mich.App. 89, 564 N.W.2d 68 (1997), appeal denied, 459 Mich. 858, 584 N.W.2d 920 (1998)(intentional injury exclusion of employer's liability insurance policy did not apply where employee alleged employer committed an intentional tort but did not allege employer had an actual intent to injure her).
AFFIRMED.
GRIFFIN and PALMER, JJ., concur.

APPENDIX
Jeannette Horne, as personal representative of the estate of Andrew Horne, alleged as follows:
At said time and place, the Defendant, SCARBOROUGH, failed to provide any type of safety equipment or safety measures to prevent the walls of the trench from caving in on ANDREW P. HORNE.
The Defendant, SCARBOROUGH, in failing to provide any type of safety equipment or safety measures, engaged in conduct which was substantially certain to result in serious injury or death.
Further, the Defendant, SCARBOROUGH, through its supervisory personnel, knew or should have known that the failure to provide such safety equipment or safety measures, was substantially certain to result in serious injury or death.
Further, the Defendant, SCARBOROUGH, failed to protect its employees, and in particular, ANDREW P. HORNE, from a known danger of a cave-in in the trench and instead engaged in a conscious disregard for the safety of its employee, ANDREW P. HORNE, which conduct was substantially certain to result in serious injury or death.
Further, the Defendant, SCARBOROUGH, knowingly provided inadequate safety equipment or safety measures to protect the well-being of its employee, ANDREW P. HORNE.
As a direct and proximate result of the conduct of the Defendant, as hereinabove alleged, the Defendant, SCARBOROUGH, violated Florida Statute 440 and Florida Statute 775.082, and 29 U.S.C. Section 666(e), providing for a maximum penalty that may be imposed which exceed sixty (60) days imprisonment of the Defendant, SCARBOROUGH's supervisory personnel.
As a further direct and proximate result of the actions of the Defendant, SCARBOROUGH, as hereinabove alleged and the violation of the Statutes as hereinabove cited, all of which contributed to or caused the death of ANDREW P. HORNE, the Defendant, SCARBOROUGH, abrogated its Workers' Compensation immunity as set forth in Florida Statute 440.
Carol and David Creason, as personal representatives of the estate of Keith Creason, alleged as follows:
On July 25, 2000, Defendant's, SCARBOROUGH CIVIL CORPORATION, supervisory personnel instructed Keith A. Creason to dig around a section of pipe, that lay in a trench which had been dug by other Scarborough personnel, in order to prepare for the installation of *1147 another section of pipe, when a wall of the excavation collapsed on him and buried him under the soil.
Employees of Defendant, SCARBOROUGH CIVIL CORPORATION, including Jerimiah Nichols and job supervisor, Defendant, GARY DANIEL McCAFFERTY, were aware of the succeptability [sic] of a cave-in in the trench before the accident occurred. Mr. McCafferty was asked by other workers on the site to install a trench box in order to secure the walls of the trench before any digging took place. Although a trench box was readily available, Mr. McCafferty consciously, willfully and with wanton disregard of the safety of the decent, [sic] refused to make use of the trench box and instead intentionally instructed Keith A. Creason to dig in the trench without the use of the trench box.
As a result of not using the trench box, the trench walls caved in which resulted in the fatal accident. Defendant, SCARBOROUGH CIVIL CORPORATION, was cited and fined by OSHA with a willful violation for failure to make use of an available trench box, a violation of 29 CFR 1926, 652(a)(1). A willful OSHA violation is one that is committed with an intentional disregard of, in plain indifference to, the requirements of an OSHA regulation, and was substantially certain to result in a cave-in, and the death of Keith A. Creason.
Defendant, SCARBOROUGH CIVIL CORPORATION, was also cited and fined by OSHA for failure to conduct an inspection of the excavation, the adjacent area, and the protective systems, by a competent person for evidence of a situation that was substantially certain to result in a cave-in, in violation of 29 CFR 1926.651(k)(1).
In addition, the trench walls were not properly sloped by Defendant, SCARBOROUGH CIVIL CORPORATION, for the type of soil (Type C) at the excavation site, as required by OSHA and pursuant to 29 CFR 1926, 652(2)(b)(2)(ii).
In addition, Defendant, SCARBOROUGH CIVIL CORPORATION, allowed the spoil pile to be placed on top of the soil that abutted one of the trench walls and left a backhoe parked on top of the spoil pile, which resulted in excessive weight on one of the trench walls and further increased the known risk of cave-in and death.
As a result of the aforementioned acts and omissions to act, Defendant, SCARBOROUGH CIVIL CORPORATION, engaged in activities which were substantially certain to result in serious injury or death.
Furthermore, Defendant, SCARBOROUGH CIVIL CORPORATION, through its supervisory personnel, knew or should have known that the failure to provide safety equipment and procedures, as required by OSHA, was substantially certain to result in serious injury or death.
Furthermore, Defendant, SCARBOROUGH CIVIL CORPORATION, failed to protect its employee, Keith A. Creason, from a known danger of a cave-in in the trench and engaged in a conscious and intentional disregard for his safety, which conduct was substantially certain to result in death or serious injury.
Furthermore, Defendant, SCARBOROUGH CIVIL CORPORATION, knowingly and intentionally, failed to provide adequate and required safety equipment or take adequate and required safety measures to protect the well being of its employee, Keith A. Creason.
As a direct and proximate result of the acts and omissions to act of Defendant, SCARBOROUGH CIVIL CORPORATION, *1148 as hereinabove alleged, Defendant, SCARBOROUGH CIVIL CORPORATION, violated § 440.11 Florida Statutes and § 775.082 Florida Statutes and 29 CFR 666(e), providing for a maximum penalty that be may [sic] imposed which exceeds sixty (60) days imprisonment of Defendant, SCARBOROUGH CIVIL CORPORATION, supervisory personnel.
OSHA has filed a criminal complaint against Defendant, SCARBOROUGH CIVIL CORPORATION, supervisory personnel, as a result of these aforementioned allegations.
As a further and direct proximate result of the actions of Defendant, SCARBOROUGH CIVIL CORPORATION, as hereinabove alleged and the violation of Statutes as hereinabove cited, all of which contributed to or caused the death of Keith A. Creason, the Defendant, SCARBOROUGH CIVIL CORPORATION, abrogated its Worker's Compensation immunity as set forth in § 440.11(1) Florida Statutes.
NOTES
[1] The Court of Appeals for the Eleventh Circuit has certified questions on this same issue to the Florida Supreme Court but those questions have not yet been answered. See Travelers Indem. Co. v. PCR Inc., 326 F.3d 1190 (11th Cir.2003). [Editor's Note: the Florida Supreme Court issued a decision answering the question on December 9, 2004, Travelers Indem. Co. v. PCR Inc., 889 So.2d 779 (Fla.2004).]
[2] See Appendix.
[3] FCCI was defending Scarborough in both actions under a reservation of rights.
[4] The standard of review for the interpretation of an insurance contract is de novo. State Farm Mutual Automobile Ins. Co. v. Parrish, 873 So.2d 547 (Fla. 5th DCA 2004); Paladyne Corp. v. Weindruch, 867 So.2d 630 (Fla. 5th DCA 2004). The standard of review for summary judgments is also de novo. Kaplan v. Morse, 870 So.2d 934 (Fla. 5th DCA 2004); Mivan (Florida), Inc. v. Metric Constructors, Inc., 857 So.2d 901 (Fla. 5th DCA 2003).
[5] In 2003, the Legislature amended section 440.11(1) and overruled Turner in part. The amendment codified the intentional tort exception recognized by Turner but, among other things, replaced the "substantial certainty" standard with the higher standard of "virtually certain." Feraci v. Grundy Marine Const. Co., 315 F.Supp.2d 1197, 1205 n. 11 (N.D.Fl.2004). The amendment is not retroactive and would not apply here since the incident occurred in 2000. Id.
[6] Since the wrongful death actions involve only the "substantially certain" type of intentional torts, public policy would not bar coverage as it does in cases involving "true" intentional torts. Compare Mason v. Florida Sheriffs' Self-Insurance Fund, 699 So.2d 268 (Fla. 5th DCA 1997) (public policy precludes coverage for deputy's demand for sexual intercourse in return for not serving arrest warrant); Lindheimer v. St. Paul Fire and Marine Ins. Co., 643 So.2d 636 (Fla. 3d DCA 1994), rev. denied, 651 So.2d 1194 (Fla.1995)(public policy precludes professional liability insurance coverage for sexual assault of patient).