**ROYAL INDEMNITY COMPANY and American and Foreign Insurance Company, Plaintiffs,**

**v.**

**SONECO/NORTHEASTERN, INC., Dubie Sowell, and Richard Archambault, Defendants.**

**No. 3:00CV0921 (GLG).**

United States District Court, D. Connecticut.

Jan. 24, 2002.

John W. Lemega, Halloran & Sage, Jack G. Steigelfest, Constance L. Epstein, Steven J. Barber, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, for Plaintiffs.

Edward B. O'Connell, Jr., David Patrick Condon, Waller, Smith & Palmer, P.C., New London, CT, Gerald S. Sack, Michael B. Pollack, Marc H. Vidone, Sack, Spector & Karsten, West Hartford, CT, Mark A. Dubois, Scott D. Camassar, The Reardon Law Firm, New London, CT, for Defendants.

## *OPINION*

GOETTEL, District Judge.

In this declaratory judgment action, ROYAL INDEMNITY COMPANY ("Royal Indemnity") and AMERICAN AND FOREIGN INSURANCE COMPANY ("American") seek a declaration that their policies of insurance issued to SONECO/NORTHEASTERN, INC. ("Soneco"), do not provide coverage for the intentional tort claims asserted by DUBIE SOWELL and RICHARD ARCHAMBAULT against their employer, Soneco, in two underlying state court actions. Royal Indemnity and American have filed a motion for summary judgment under Rule 56, Fed.R.Civ.P., asking this Court to enter judgment in their favor because there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law [**Doc. # 29**]. After careful consideration of the parties' submissions and after hearing oral argument of counsel, the Court concludes that these policies of insurance do provide coverage and denies the Motion for Summary Judgment.

## *BACKGROUND*

Most of the facts giving rise to this action are undisputed. Archambault and Sowell, employees of Soneco, instituted separate personal injury actions in state court against Soneco, claiming damages for personal injuries that they sustained in a work-related accident during the course of their employment. For all purposes relevant to this declaratory judgment action, their complaints are identical.

In their complaints, they allege that Soneco, their employer, had entered into an agreement with Konover Construction Company, the general contractor, under which Soneco was to dig and excavate the trenches for the installation of water lines at the BJ's Wholesale Club site in Willimantic, Connecticut. On October 30, 1998, Archambault was operating an excavator when a portion of a nearby trench collapsed, burying a co-worker, James Dowd. Archambault and Sowell, a co-worker who was also at the site, rushed to free Dowd. While they were attempting to rescue Dowd, another portion of the trench collapsed, completely burying them, causing personal injuries to both of them. (Archambault Am. Comp. ¶ 4; Sowell 2d Rev. Comp. ¶ 4.)[1]

Both complaints allege in the first count, which is entitled "Intentional Misconduct as to the defendant, Soneco/Northeastern, Inc.," that the injuries and damages sustained by Archambault and Sowell were proximately caused by the *"intentional and reckless misconduct"* of Soneco,[2] in that it:

---

1. *Richard Archambault v. Soneco/Northeastern, Inc.*, No. CV–99–0551620–S (Sup.Ct. Jud. Dist. New London, Conn.)(Am. Compl. dated Oct. 30, 2000)(Ex. "A" to Mot. Summ. J.); *Dubie Sowell v. Soneco/Northeastern, Inc. and Konover Construction Corp.*, No. CV–00–

0553393–S (Sup.Ct. Jud. Dist. New London, Conn.)(2d Rev. Compl. dated Dec. 7, 2000)(Ex. "B" to Mot. Summ. J.).

2. Both complaints also assert negligence claims against Konover Construction Compa-

a. refused to provide trench boxes or other cave-in protection for employees engaged in trenching operations, such as the plaintiff, when it knew that such protection was required by law and necessary to protect the plaintiff from injury or death;

b. failed to require trench boxes or other cave-in protection for employees engaged in trenching operations, such as the plaintiff, when it knew that such protection was required by law and necessary to protect the plaintiff from injury or death;

c. ordered the plaintiff to excavate trenches when it knew that such work was dangerous and hazardous under the circumstances;

d. failed to provide trench boxes or other safety equipment in order to save money and time and speed productivity;

e. ordered the plaintiff to excavate trenches without providing trench boxes or sufficient space to step or slope the trench walls so as to prevent cave-ins;

f. knew that said trench had a high probability of collapse and failure due to soil conditions consisting of loamy sand;

g. violated 29 C.F.R. § 1926.651(c)(2) by failing to provide a safe means of egress from trench excavations;

h. violated 29 C.F.R. § 1926.651(h) by allowing employees to work in excavations in which water accumulated and failed to protect its employees from hazards associated with water accumulation, such as cave-ins;

i. violated 29 C.F.R. § 1926.651(j)(1) by failing to provide its employees adequate protection from hazardous loose rock or soil, such as scaling to remove loose material, installation of protective barricades as necessary to stop and contain falling material, or other means of equivalent protection;

j. violated 29 C.F.R. § 1926.651(j)(2) by failing to provide its employees protection from excavated material, failing to place or require the placement of such materials at least two feet from the edge of the excavations, and/or failing to use retaining devices sufficient to prevent materials from falling or rolling into excavations;

k. violated 29 C.F.R. § 1926.651(k) by failing to provide a competent person to perform daily inspections of excavations, adjacent areas, and protective systems for evidence of hazardous situations, such as possible cave-ins, and failing to inspect for such dangers;

l. violated 29 C.F.R. § 1926.652(a) by failing to select or construct sloping and benching systems in accordance with 29 C.F.R. § 1926.652(b); and by failing to select and construct support systems, shield systems, and/or other protective systems in accordance with 29 C.F.R. § 1926.652(c);

m. failed to ensure cave-in protection was provided for each employee working in a trench that exceeded six feet in depth, including the plaintiff;

n. failed to adequately train its employees in good construction practices;

o. failed to properly train and supervise its employees to ensure safe excavating practices;

ny, the general contractor on the construction project. However, the claims against Kon- over are not relevant to the instant declaratory judgment action.

p. failed to ensure safe working conditions for employees engaged in trenching operations in accordance with applicable federal regulations;

q. failed to ensure safe working conditions for employees engaged in trenching operations when it knew that a cave-in could result in severe injury to or death or its employees, such as the plaintiff;

r. failed to provide cave-in protection for its employees after and despite a citation by the Occupational Safety and Health Administration (OSHA) for a similar safety violation on October 6, 1998 at a job site on Route 80 in front of the Ames Department Store in East Haven, Connecticut;

s. intentionally failed to provide cave-in protection for employees engaged in trenching operations when it was both required and feasible to do so;

t. intentionally failed to provide cave-in protection for employees engaged trenching operations, despite a high risk of injury or death of its employees, including the plaintiff, in order to accelerate productivity and achieve greater profits.

(Archambault Am. Compl. ¶ 5; Sowell 2d Rev. Compl. ¶ 5)(emphasis added). Plaintiffs allege that the "aforesaid conduct of [Soneco] exhibited reckless disregard for the life and well-being of the plaintiff and said conduct was *substantially certain* to result in the above-mentioned cave-in and the severe injuries sustained by the plaintiff as hereinafter described." *Id.* at ¶ 6 (emphasis added).

At the time of the trench collapse giving rise to these two lawsuits, Soneco was insured under a workers' compensation and employer's liability insurance policy issued by Royal Indemnity, Policy No. 99 RCS 338055, and under a commercial general liability insurance policy issued by American, Policy No. ASP 130512. Both insurers provided Soneco with a defense in the underlying tort actions under a reservation of rights, relying on various coverage exclusions, and then filed this declaratory judgment action. Both state court actions remain pending.

### DISCUSSION

Royal Indemnity's Employer's Liability Insurance Policy provides in relevant part:

> We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

(Form WC 00 00 00 A, Pt. II, Sec. B, at p. 3.) The policy specifically excludes the following:

> 4. any obligation imposed by a workers compensation ... law, or any similar law;
>
> 5. bodily injury intentionally caused or aggravated by you; ...

*Id.* Sec. C, ¶¶ 4, 5. The policy further provides:

> We have the right and duty to defend ... any claim, proceeding or suit against you for damages payable by this insurance....
>
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance....

*Id.* Sec. D.

The Commercial General Liability Policy issued by American provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the

insured against any "suit" seeking damages for "personal injury" or "property damage" to which this insurance does not apply....

(CG 00 01 01 96 at 1, § I, Coverage A, ¶ 1.a.) The policy specifically excludes from coverage "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* ¶ 2.a.

■ Royal Indemnity and American argue that, in the underlying state-court actions, Archambault and Sowell have carefully framed their claims against Soneco as claims for intentional and reckless misconduct so as to circumvent the exclusivity provision of the Workers' Compensation Act, Conn. Gen.Stat. § 31–284(a),[3] as interpreted by the Connecticut Supreme Court in *Suarez v. Dickmont Plastics Corp.*, 242 Conn. 255, 280, 698 A.2d 838 (1997).[4] By so doing, they maintain that these claims must necessarily fall within the clear language of the policies' exclusions for intentional injuries and, therefore, they are obligated neither to provide Soneco with a defense in these actions nor to provide coverage for damages for which Soneco may be liable.

Defendants do not deny that the factual allegations in the *Archambault* and *Sowell* complaints attempt to invoke the "substantial certainty" exception to the exclusivity provision of the Workers' Compensation Act, as set forth in *Suarez*. They argue, however, that the issue before this Court is not whether the underlying complaints

---

**3.** Connecticut General Statutes § 31–284(a), commonly referred to as the exclusivity provision of the Workers' Compensation Act, provides:

An employer shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment... but an employer shall secure compensation for his employees as provided under this chapter .... All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees ... arising out of personal injury ... sustained in the course of employment are abolished other than rights and claims given by this chapter.....

**4.** The Connecticut Supreme Court has interpreted the exclusivity provision of the Workers' Compensation Act as a total bar to common law actions by an employee against his or her employer for job-related injuries with one narrow exception that exists when the employer has engaged in willful or serious misconduct. *Suarez v. Dickmont Plastics Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994)("*Suarez I*"), *rev'd on other grounds,* 242 Conn. 255, 698 A.2d 838 (1997)("*Suarez II*"). Both the action producing the injury and the resulting injury must be intentional. *Id.* "The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intend-

ed act.... The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty." *Id.* at 109, 639 A.2d 507 (internal citations and quotations omitted). This standard has become known as the "substantial certainty" standard.

Three years after the initial *Suarez* decision, the Connecticut revisited this issue in what is frequently referred to as "*Suarez II,*" 242 Conn. 255, 698 A.2d 838 (1997). The second appeal arose after a trial on the merits in which the jury returned a verdict in favor of the plaintiff, indicating in answers to special interrogatories that it found the defendant liable under the "actual intent to injure" standard but not under the "substantial certainty" standard. The Supreme Court held

to escape the exclusivity of the [Workers' Compensation Act], the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act.

242 Conn. at 280. Thus, an intentional tort claim premised on either of two theories, the "intended tort" theory or the "substantial certainty" theory, will avoid the exclusivity provision of the Workers' Compensation Act.

allege a legally sufficient cause of action under *Suarez* and its progeny, but rather whether the allegations of the complaint invoke the exclusions of the policies so as to defeat coverage.

As defendants point out, the critical inquiry is not whether the allegations against the employer will withstand scrutiny under *Suarez I* and *II* so as to avoid the workers' compensation bar, but rather whether the allegations fall within the language of the policy's exclusion. "[I]t is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the underlying complaint.... The obligation of the insurer does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability." *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois*, 247 Conn. 801, 807, 724 A.2d 1117 (1999); *see also Edelman v. Pacific Employers Insur. Co.*, 53 Conn. App. 54, 59, 728 A.2d 531, *cert. denied*, 249 Conn. 918, 733 A.2d 229 (1999). "[I]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Imperial Casualty & Indemnity Co. v. State*, 246 Conn. 313, 323–24, 714 A.2d 1230 (1998)(emphasis in original).

Under Connecticut law, "construction of an insurance contract presents a question of law for the court." *Aetna Life & Casualty Co. v. Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991). The terms of an insurance policy are to be construed according to the general rules of contract interpretation. *Heyman Associates No. 1 v. Insur-*

*ance Co. of the State of Pennsylvania*, 231 Conn. 756, 768–70, 653 A.2d 122 (1995). "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be adduced, must be accorded its natural and ordinary meaning." *Id.* at 770, 653 A.2d 122. "But if the terms are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted." *Smedley Co. v. Employers Mutual Liability Insur. Co.*, 143 Conn. 510, 513, 123 A.2d 755 (1956)(applying these principles in the context of a policy exclusion).

### Royal Indemnity's Employer's Liability Policy

Defendants argue that the exclusion in Royal Indemnity's Employer's Liability Policy does not apply because the complaints do not allege that Soneco "intentionally caused or aggravated" the bodily injury, as required by the express language of the exclusion. Citing *TIG Insurance Company v. Windham Community Hospital*, No. CV 960053660S, 1997 WL 97371 (Conn.Super.Jan. 8, 1997), which interpreted an identical exclusion, they assert that the exclusion pertains only to bodily injuries which the insured intended to inflict. In the *TIG Insurance Company* case, the underlying suit alleged that the defendant hospital had intentionally placed the plaintiff-employees in circumstances where it was substantially certain that they would be injured. The court held as a matter of law that the insurance policy covered the employees' claims against the hospital because it lacked any accusation that the hospital intended to injure its employees. *Id.* at *1. "The underlying suit sets forth a classic allegation of reckless conduct, i.e., a conscious disregard for a known risk, but it is a far cry from an allegation of intentional battery." *Id.* "To establish an intentional act triggering the

exclusion clause, the claim must be one which avers that the insured intended the act which caused the injury and the bodily injury itself." *Id.* Defendants argue that since the *Archambault* and *Sowell* complaints do not allege that Soneco both intended the injury-producing acts and intended the resulting injuries themselves, the Royal Indemnity exclusion does not apply.

In a supplemental brief filed in this action, defendants cite Judge Chatigny's recent decision in *Reliance Insurance Co. v. Vitale*, 2001 WL 1768424, —— F.Supp.2d —— (D.Conn.2001), in which the Court addressed the issue of whether an employer's liability insurance policy provided coverage for a tort action brought by an injured employee, who alleged that his employer engaged in "willful, serious and intentional misconduct." The plaintiff-employee alleged that the employer had required him to operate a drilling machine in highly dangerous conditions which were "substantially certain" to cause serious and life-threatening injuries to the plaintiff. Like the Royal Indemnity policy in the instant case, the policy at issue excluded any obligation imposed by a workers' compensation law or bodily injury intentionally caused or aggravated by the employer. The Court held that the exclusion did not apply because the complaint did not allege that the employer

> engaged in conduct with the intent of causing the injuries, as would be the case if they were relying on the "intended tort theory" of employer liability discussed in *Suarez I* and *Suarez II*. Rather, their complaint invokes the "substantial certainty theory," which enables an employee to recover damages against an employer for bodily injury even if the employer did not actually intend to cause the injury, provided the injury was "substantially certain" to occur.

*Id.* at *11, —— F.Supp.2d at ——. The Court concluded that, in light of the *Suarez* opinion and the traditional purpose of employer's liability insurance as a "gap-filler," the policy did not exclude coverage for the claims in the underlying action based on the "substantial certainty theory." *Id.*

The specific allegations in the *Archambault* and *Sowell* complaints reference intentional acts and omissions by Soneco— e.g., the refusal to provide trench boxes, the failure to provide a safe means of egress, allowing plaintiffs to work in excavations where water had accumulated, the failure to provide adequate training— which, they allege, were "substantially certain" to result in the injuries that they sustained. Nowhere do they allege that Soneco intentionally injured them or intentionally aggravated their injuries. We find that their claims, as alleged, of intentional acts and omissions by Soneco that were substantially certain to result in injuries do not fall within the language of the exclusion in Royal Indemnity's policy for "bodily injury intentionally caused or aggravated" by the insured.

In so holding, we recognize that there is a divergence of opinion on this issue in substantially similar cases involving identical policy exclusions. *See, e.g., Cavalier Mftg. Co. v. Employers Insur. of Wausau*, 222 Mich.App. 89, 564 N.W.2d 68 (1997)(construing an identical exclusionary clause and holding that it did not apply to an employee's suit against his employer for intentional misconduct that was "substantially certain" to cause the injuries that occurred), *appeal denied*, 459 Mich. 858, 584 N.W.2d 920 (1998); *accord Ziebart International Corp. v. CNA Insur. Cos.*, 78 F.3d 245 (6th Cir.1996)(same). *But see, e.g., Travelers Insur. Co. v. Noble Oil Services, Inc.*, 42 F.3d 1386, 1994 WL 684031

(4th Cir.1994)(Table)(holding that in order to allege a cause of action that would circumvent the North Carolina workers' compensation law, the plaintiff must necessarily allege that the injury as well as the act were intentional, and, therefore, the complaint would fall within the intentional injury exclusion under the employer's liability policy). However, after a careful review of these cases, we find that the better reasoned approach is that taken by Judge Chatigny in the *Reliance National Insurance Co.* case, and hold accordingly. Therefore, we find that the claims set forth in the *Archambault* and *Sowell* complaints are not excluded from coverage under Royal Indemnity's employer's liability policy and that Royal has a duty to provide a defense to Soneco in these actions.

### American's Commerical General Liability Policy

As noted above, the exclusion in American's Commercial General Liability Policy is worded differently than the exclusion in Royal Indemnity's policy. It excludes from coverage bodily injury "expected or intended from the standpoint of the insured." Read literally, this exclusion requires the Court to apply a subjective standard in determining whether the insured expected the bodily injury to result from its intentional acts. *See, e.g., Golec v. Metal Exchange Corp.,* No. 220166, 2002 WL 44414, at *5 (Mich.App. Jan. 11, 2002)(interpreting an identical policy exclusion as requiring consideration of the subjective expectation of the employer). The complaints at issue, however, invoke an objective standard for determining whether the injuries were "substantially certain" to occur as a result of the employer's intentional conduct. The two are not necessarily synonymous. *See Id.* As the Court in *Ott v. LPK Systems, Inc.,* 2001 WL 1539057, —— So.2d —— (2001), noted in construing an identical exclusion,

[t]he subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy. . . .

This inquiry into the subjective intention or expectation of the insured contrasts sharply with the traditional tort inquiry into an actor's intent. The Restatement (Second) of Torts describes intended consequences as those which the actor knows or are "substantially certain" to result from an act, whether the actor consciously desires those consequences or not. *Restatement (Second) of Torts* § 8A (1965); *see also* W. Prosser, *Law of Torts* § 8 (4th Ed.1971). While the inquiry regarding intentional torts asks which consequences an objective reasonable person might expect or intend as the result of a deliberate act, we are concerned, under the language of this insurance contract, with the injury subjectively intended or expected by the insured. . . .

*Id.* at *3, —— So.2d at —— (citations omitted). The Court further noted that the "inquiry into whether injuries are 'intended or expected' by an insured under the terms of an insurance contract differs from the inquiry into whether an act is 'intentional' under the worker's compensation statute's intentional acts exception to a coemployee's tort immunity." *Id.* at *4, —— So.2d at ——. The Court held that the intentional act exception under the worker's compensation statute encompassed a "tort-based standard" which exposed the actor to liability for injuries he did not specifically envision or desire to produce but which were "substantially certain" to occur. *Id.* at *5, —— So.2d at ——. "By contrast, the contract of insurance . . . excludes coverage only for those injuries, which the defendant subjectively intended to inflict." *Id.; see also Patrons–Oxford*

**534**

*Mutual Insur. Co. v. Dodge,* 426 A.2d 888, 892 (Me.1981).

We have found no Connecticut authority interpreting the same exclusionary language, particularly as it relates to intentional tort claims brought under a "substantial certainty" theory of liability. Similar "expected or intended" language, however, is employed in liability policies in defining the term "occurrence," and has been construed as incorporating a subjective standard, rather than an objective tort-based standard.

In *Linemaster Switch Corp. v. Aetna Life and Casualty Corporation,* No. CV91–0396432S, 1995 WL 462270, at *23 (Conn.Super. July 25, 1995), the plaintiff-insured asked the court to enter a declaratory judgment that Aetna had a duty to defend it in two environmental actions brought against it. The comprehensive liability policy at issue employed the "intended or expected" language in defining "occurrence" as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* The Court, citing Appleman's treatise on *Insurance Law & Practice,* noted that the law was unsettled as whether the "intended or expected" language required application of a subjective or objective test, but concluded that the majority view was that the test to be applied was a subjective one, which the Court accepted as a "fair interpretation," since the policy could have referenced a reasonable man standard rather than specifically referring to the "standpoint of *the* insured." *Id.* at *24 (citing cases); *see also Stonewall Insur. Co. v. Asbestos Claims Management Corp.,* 73 F.3d 1178, 1205 (2d Cir.1995)(applying a subjective standard to the "intended or expected" language of the policy under New York law), *opinion modified on other grounds,* 85 F.3d 49 (2d Cir.1996).

Because we find that the exclusion in American's commercial liability policy encompasses a subjective standard and the underlying complaints reference an objective standard, we cannot say that the allegations necessarily fall within the policy's exclusion, particularly in light of the nature of the specific claims asserted. Accordingly, because the claims of Archambault and Sowell could fall within the coverage provided by American's policy, American has a duty to defend Soneco in these two underlying state court cases. Of course, whether Royal Indemnity and/or American will ultimately be liable for any damage award against Soneco will depend on the specific findings of the jury in the state court actions.

### *CONCLUSION*

Therefore, for the reasons set forth above the motion for summary judgment of Royal Indemnity Company and American and Foreign Insurance Company is DENIED.

SO ORDERED.